# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| TRUSTEES OF THE TEAMSTERS UNION LOCAL NO. 142 PENSION TRUST FUND and TRUSTEES OF THE TEAMSTERS UNION LOCAL NO. 142 TRAINING TRUST FUND, )<br>Plaintiffs, )<br>)<br>v. )<br>)<br>McALLISTER, INC., )<br>Defendant. ) | CAUSE NO.: 2:08-CV-88-PRC |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Summary Judgment [DE 13], filed by Plaintiffs on December 15, 2008. For the foregoing reasons, the Court hereby **GRANTS** the Plaintiffs' Motion for Summary Judgment [DE 13].

## PROCEDURAL BACKGROUND

On June 6, 2008, Plaintiffs, the trustees of a multi-employer pension trust fund and training trust fund, filed a Complaint against Defendant McAllister, Inc. ("Defendant"), pursuant to Sections 502(a)(3), (e)(1), and (f) of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(3), (e)(1), and (f), and Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), as amended 29 U.S.C. § 185(a), alleging that Defendant failed to pay pension trust fund and training trust fund contributions as required by the Collective Bargaining Agreement, Restated Trust Agreement, and Employer Contribution Collection Policy. On July 2, 2008, Defendant filed an Answer.

On December 15, 2008, Plaintiffs filed the instant Motion for Summary Judgment. Defendant filed its Response brief on February 3, 2009, to which Plaintiffs filed their Reply brief on February 18, 2009.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

**FACTS**

Defendant entered into a Collective Bargaining Agreement ("CBA") with the Plaintiffs, signed by Defendant on October 12, 2006, but effective June 1, 2006. Article 14 of the CBA requires Defendant to pay contributions to the Plaintiffs' Pension Trust Fund ("Pension Fund") and provides, in relevant part:

> Article 14
> PENSION
>
> The Employer [i.e., Defendant] shall pay the following amounts per hour worked per employee into Teamsters Union No. 142 Pension Trust Fund (Fund), an irrevocable trust heretofore created by an Agreement and Declaration of Trust (Trust Agreement) pursuant to a Collective Bargaining Agreement between certain Employers and the Union.
>
> | PERIOD | EMPLOYER CONTRIBUTION |
> |---|---|
> | [...] | |
> | 6/01/07 - 5/31/08 | ($5.00) |
> | 6/01/08 - 5/31/09 | ($5.25) |
> | [...] | |

Pls.' Mot. Summ. J., Ex. A, at 15-16 (CBA). Further, Article 9 of the CBA requires Defendant to pay contributions to Plaintiffs' Training and Apprenticeship Fund ("Training Trust Fund") and provides, in relevant part:

> Section 2. On work covered by this Agreement, the Employer [i.e., Defendant] agrees to pay into the Teamsters Local No. 142 Training and Apprenticeship Fund the following amounts per hour. Payment shall be made on the dates, in the manner, form and in accordance with the rules and regulations as adopted by the Trustees of the herein mentioned Training and Apprenticeship Fund.
>
> | PERIOD | EMPLOYER CONTRIBUTION |
> |---|---|

|         |         |
|---------|---------|
| [...]   |         |
| 6/01/07 - 5/31/08 | ($0.65) |
| 6/01/08 - 5/31/09 | ($0.75) |
| [...]   |         |

*Id*. at 9.

After entering into the CBA, from September 1, 2007, through December 31, 2007, Defendant failed to pay the required contributions into the Pension Fund or the Training Trust Fund. Consequently, Plaintiffs hired Legacy Professionals, LLP to perform a payroll audit of Defendant. The auditor found that Defendant owed $7,920.00 to the Pension Fund and $1,029.61 to the Training Trust Fund, up to the date of the audit. After receiving a copy of the audit report, Defendant failed to pay the delinquent amounts. Further, Defendant failed to report hours worked or pay contributions after the payroll audit period.

As a signatory to the CBA, Defendant is bound by the Restated Agreement and Declaration of Trust ("Trust Agreement"). The Trust Agreement provides that if an employer is found to be delinquent in contributions, the Trustees are at liberty to take necessary steps to collect the funds and the employer shall pay the costs of an audit, interest on all money due, and all expenses of collection incurred by the Trustees, including costs and legal fees. In addition, the Trust Agreement and Employer Contribution Collection Policy ("Collection Policy") require Defendant to pay 10% per annum interest on any unpaid contributions pursuant to ERISA, 11 U.S.C. § 1132(g)(2)(C)(I), to pay liquidated damages in the sum of twenty percent (20%) of the total amount due, as well as legal fees and costs, pursuant to ERISA, 29 U.S.C. § 1132(g)(2)(D).

After the instant suit was filed, on June 13, 2008, Defendant made a payment of $23,089.12 toward contributions through April 1, 2008.

On July 3, 2008, Plaintiffs' counsel sent a letter to Defendant's counsel providing that "[e]nclosed is a settlement proposal that I received from Joel Clemons. After speaking with Jay Smith, the Fund Manager, we are willing to reduce the liquidated damages claim to $100.00, and will accept a total of $3,455.29 in payment of all outstanding charges." Def.'s Resp. Br., Ex. 1. The letter further provided that Defendant should forward the payment, made payable to Teamsters Union Local No. 142 Pension Trust Fund, within seven days, and that "[u]pon receipt of notification that the check has cleared our bank, we will dismiss the pending lawsuit." *Id.* On July 8, 2008, Defendant's counsel sent a letter to Plaintiffs' counsel stating that "[m]y client is in agreement with the settlement of the above matter," and indicating that Defendant's counsel would have the Defendant's check by July 11, 2008. *Id.* at Ex. 3. The letter also requested that Plaintiffs' counsel notify Defendant's counsel as to whether the check should be picked up or mailed. On the same day, Plaintiffs' counsel responded via fax stating that the check should be sent by mail when received.

On July 11, 2008, Defendant's counsel sent the settlement check to counsel for Plaintiff, along with a letter providing that "[t]he check is conveyed to you at this time on the condition that the settlement check is neither negotiated nor conveyed to your client until such time the dismissal papers have been filed with the Court." *Id.* at Ex. 5. On July 15, 2008, Plaintiffs' counsel sent an e-mail to counsel for Defendant, providing that she received the settlement check and letter. Further, the e-mail provided that "[y]ou instructed me not to negotiate the check until the dismissal is filed. However, my earlier letter to you stated that we would not dismiss the lawsuit until we could confirm that the check has cleared the funds' bank." Pls.' Reply Br., Ex. 2. The e-mail further provided that because Defendant was in arrears for the May 2008 contributions, Defendant had to continue to pay current contributions before the matter could be resolved.

On August 6, 2008, Plaintiffs' counsel sent a letter to counsel for Defendant indicating that no response had been received from Defendant regarding Plaintiffs' previous messages. The letter further

4

provided that Defendant must agree to pay all contributions as required by the CBA and that payment for the July contributions must be received by August 31, 2008. Additionally, the letter provided that Defendant must provide reports of hours worked and payment in full of June 2008 contributions to the Pension Fund and Training Trust Fund, as well as accrued interest. Further, the letter required that Defendant confirm that the settlement check would be honored, pay additional attorney fees, and indicated that if Defendant did not comply by August 12, 2008, then Plaintiffs would "reinstate its claim to liquidated damages in the amount of 20% of all delinquent contributions which were paid in 2008, including June 2008 contributions which are delinquent as of this date." *Id.* at Ex. 4. Defendant failed to reply.

On December 12, 2008, Plaintiffs' counsel sent a letter to Defendant's counsel, returning the uncashed settlement check sent on July 11, 2008, because Defendant failed to keep contributions current.

Plaintiffs then filed a Motion for Summary Judgment on December 15, 2008, alleging that after making its June 13, 2008 payment, Defendant made sporadic contributions and was then in arrears for October 2008 contributions. Defendant filed its response brief on February 3, 2009, claiming that a settlement was reached in this case on July 8, 2008, and that, without filing an amended complaint, Plaintiffs were not entitled to seek damages for the then-unpaid October 2008 contributions. On February 18, 2008, Plaintiffs filed a reply brief, indicating that the October 2008 contributions were paid, but that, as of the date the reply brief was filed, contributions for November and December 2008 were unpaid. Accordingly, Plaintiffs submitted a revised claim for damages, including these unpaid contributions.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery*

*Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## ANALYSIS

In the instant Motion for Summary Judgment, Plaintiffs allege that Defendant failed to make contributions to the Pension Fund and Training Trust Fund, as required by the CBA, and seek an order requiring Defendant to pay all unpaid contributions, interest, liquidated damages, audit costs, and attorneys fees and costs owed to Plaintiffs. In response, Defendant argues that the parties entered an

enforceable settlement agreement on June 8, 2008, and any additional damages sought by Plaintiffs should not be considered as part of this case because Plaintiffs did not file an amended complaint and such contributions were not due at the time that the instant suit was filed. The Court addresses the arguments in turn.

### A. Existence of a Settlement Agreement

A settlement agreement is essentially interpreted like any other contract. *See U.S. v. Rand Motors*, 305 F.3d 770, 774 (7th Cir. 2002); *Hernnreiter v. Chicago Hous. Auth.*, 281 F.3d 634, 636 (7th Cir. 2002). "Issues regarding the formation, construction and enforcement of settlement agreements are governed by state contract law." *Sims-Madison v. Inland Paperboard and Packaging, Inc.*, 379 F.3d 445, 448 (7th Cir. 2004).

Under Indiana law, the elements of a binding contract include an offer, acceptance of the offer, consideration, and meeting of the minds between the parties. *See Bennett v. Broderick*, 858 N.E.2d 1044, 1048 (Ind. Ct. App. 2006). The parties must have a meeting of the minds on all essential terms in order for a contract to be binding. *Id*. Material terms of a contract must be reasonably certain or determinable. *See McLinden v. Coco,* 765 N.E.2d 606, 613 (Ind. Ct. App. 2002) ("All that is required is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom."). The contract must "provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Id.* (citing Restatement (Second) of Contracts § 33(2), at 92 (1981)).

An offer is valid and can be accepted until or unless it is revoked or withdrawn before acceptance. *See* Restatement (Second) of Contracts § 42 ("An offeree's power of acceptance is terminated when the offeree receives from the offeror a manifestation of an intention not to enter into the proposed contract."); *Williston on Contracts* § 5:8 ("As a result of the rule that unsealed promises without consideration are not binding, offers, unless under seal in a jurisdiction recognizing the seal

8

or given for a consideration, may be revoked by the offeror at any time prior to the creation of a contract by acceptance.")

Any act or communication that would cause a reasonable person to believe that an offer has been withdrawn or revoked is sufficient to constitute a withdrawal or revocation of the offer (no specific words or magic words are necessary). *See Williston on Contracts* § 5:8 ("In general, any statement which clearly indicates or implies unwillingness on the part of the offeror to contract according to the terms of the offer is sufficient, though the offeror does not use the word "revoke" or any similar operative language.").

It is well settled that in order for an offer and an acceptance to constitute a contract, the acceptance must meet and correspond with the offer in every respect. *See I.C.C. Protective Coatings, Inc. v. A.E. Staley Mfg. Co.* 695 N.E.2d 1030, 1034-1035 (Ind. Ct. App. 1998). This is sometimes referred to as the "mirror image rule." An acceptance which varies the terms of the offer is considered a rejection and operates as a counteroffer, which may then be accepted by the original offeror. *Id.* Thus, a counteroffer terminates a previous offer or previous counteroffer.

In its response brief, Defendant argues that a valid settlement agreement existed as of June 8, 2008. After reviewing the exhibits submitted with the parties' briefs in this matter, the Court concludes that a valid settlement agreement existed between the parties. On July 3, 2008, Plaintiffs' counsel sent a letter to Defendant's counsel stating that "[e]nclosed is a settlement proposal that I received from Joel Clemons. After speaking with Jay Smith, the Fund Manager, we are willing to reduce the liquidated damages claim to $100.00, and will accept a total of $3,455.29 in payment of all outstanding charges." Def.'s Resp. Br., Ex. 1. The July 3, 2008 letter further provided that Defendant should forward payment, in form of a check made payable to "Teamsters Union Local No. 142 Pension Trust Fund," to Plaintiffs' counsel within seven days, and that "[u]pon receipt of notification that the check has cleared our bank, we will dismiss the pending lawsuit." *Id.* In sum, the letter provided three material

terms of settlement: (1) the settlement amount, (2) Defendant's obligation to send the check, and (3) the timing of dismissal. Accordingly, the Court finds that the terms of the July 3, 2008 letter constituted an offer.

In response to the July 3, 2008 letter, Defendant's counsel sent Plaintiff's counsel a letter on July 8, 2008, providing that "[m]y client is in agreement with the settlement of the above matter," and asking for Plaintiffs' counsel to contact Defendant's counsel to indicate whether the check would be picked up or should be mailed. *Id.* at Ex. 3. The July 8, 2008 letter did not add any conditions to Defendant's purported acceptance and did not seek to vary any of the terms of the July 3, 2008 letter. Further, the offer was not revoked by Plaintiffs. Accordingly, the Court finds that the July 8, 2008 letter constituted an acceptance of the July 3, 2008 offer that met and corresponded with the offer in every respect and demonstrated a meeting of the minds on all essential terms. Therefore, the July 3, 2008 and July 8, 2008 letters formed a valid settlement agreement between the parties[1] comprised of the following terms: (1) Defendant agreeing to pay $100.00 in liquidated damages and $3,455.29 in all outstanding charges, (2) in a check payable to "Teamsters Union Local No. 142 Pension Trust Fund" within seven days, and (3) Plaintiffs agreed to dismiss the lawsuit upon receipt of notification that Defendant's check cleared Plaintiffs' bank.

Nonetheless, even though the Court finds that a settlement agreement was reached, Defendant is precluded from enforcing it to withstand summary judgment. The correspondence between the parties did not end with the July 8, 2008 letter. Rather, in performing its duty under the settlement agreement to submit the check to Plaintiffs in the agreed amount, on July 11, 2008, Defendant's counsel included with the check a letter providing that "[t]he check is conveyed to you at this time *on the condition that the settlement check is neither negotiated nor conveyed to your client* until such time

---

[1] The Court notes that consideration existed here in the form of Defendant agreeing to pay the amounts stated in the July 3, 2008 letter in exchange for Plaintiffs agreeing to dismiss the suit upon Defendant's check clearing.

the dismissal papers have been filed with the Court." *Id.* at Ex. 5 (emphasis added). The July 11, 2008 letter conflicts with the terms of the settlement agreement, which provided that the suit would only be dismissed *after* Plaintiffs received notification that Defendant's checked cleared their bank. By submitting the check to Plaintiffs on the condition that it could only be cashed after the case was dismissed, Defendant materially breached the settlement agreement, which specifically provided that the suit would be dismissed "*[u]pon receipt of notification that the check has cleared our bank*," and not beforehand. Def.'s Resp. Br., Ex. 1 (emphasis added). It is well-settled under Indiana law that "a party first guilty of a material breach of contract *may not . . . seek to enforce the contract against the other party* should that party subsequently breach the contract" or if the party refuses to perform under the contract. *Felker v. Southwestern Emergency Medical Service, Inc.*, 521 F. Supp. 2d 857, 869 (S.D. Ind. 2007) (emphasis added). Here, Defendant argues that Plaintiffs have reneged on the settlement agreement by returning the uncashed check along with the December 12, 2008 letter. However, because Defendant breached the contract by conditionally submitting the settlement check with the July 11, 2008 letter, in contravention to the settlement agreement's terms, it cannot now try to enforce the settlement agreement against Plaintiffs. Accordingly, the Court finds that although a valid settlement agreement did exist between the parties, Defendant is precluded from enforcing it against Plaintiffs in the instant matter.

## B. Unpaid Contributions

The Plaintiffs, as Trustees of the Pension Fund and Training Trust Fund, have brought their collection Complaint pursuant to the ERISA, as amended, 29 U.S.C. §§ 1132, 1145, and the LMRA, as amended, 29 U.S.C. § 185.

Section 1145 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. Section 1132 of ERISA provides:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
> (I) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, *and*
> (E) such other legal or equitable relief as the court deems appropriate.
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2) (emphasis added).

In addition, Section 185 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185. Accordingly, here, the Plaintiffs have the right to enforce monetary obligations incurred by an employer, i.e., Defendant, pursuant to the parties' CBA.

In Plaintiffs' Motion for Summary Judgment, Plaintiffs argue that Defendant was bound by the CBA, the CBA required Defendant to make contributions to the Funds, Defendant failed to make the required contributions, and breached the CBA in violation of ERISA. Plaintiffs then specify that, as

12

of the date that the Motion for Summary Judgment was filed, Defendant was delinquent in making the October 2008 contributions. In its response brief, Defendant primarily focuses on the existence of a settlement agreement and fails to refute that, at the time the response brief was filed, Defendant was delinquent in making the October 2008 contributions. Instead, in the statement of material facts section of Defendant's response brief, Defendant represents that it "continued to pay contribution payments when due *until* [but not *through*] November 30, 2008." Def.'s Resp. Br. 3 (emphasis added). Therefore, Defendant has failed to create a genuine issue of material fact regarding its delinquency in making the October 2008 contributions.

In Plaintiffs' reply brief, Plaintiffs acknowledge that after the Motion for Summary Judgment was filed, presumably after Defendant filed its response brief, Defendant paid the October 2008 contributions. Nonetheless, Plaintiffs argue that Defendant was delinquent in making contributions for November and December 2008. As previously noted, in Plaintiffs' Motion for Summary Judgment, Plaintiffs generally argue that Defendant failed to make contributions as required by the CBA and, accordingly, breached the CBA and ERISA. The Court finds that the allegations regarding Defendant's failure to make contributions is broadly worded so as to encompass Defendant's ongoing failure to make contributions after the Motion for Summary Judgment was filed. Accordingly, because Defendant fails to allege that it continued to make timely contributions for any other time period, no genuine issue of material fact exists as to the delinquencies for the November and December 2008 contributions.

Defendant argues in its response brief that Plaintiffs should be precluded from recovering any additional amounts due after the suit was filed as no amended complaint was filed in this matter and such contributions were not yet due when the suit was filed. While Defendant is correct that Plaintiffs did not file an amended complaint in this matter to recover damages for contributions that became due, and delinquent, after the suit was filed, they were not required to do so. Although the Seventh Circuit

has not specifically addressed this issue, courts in other circuits have concluded that plaintiffs "need not amend or supplement their pleadings in order to seek damages, including liquidated damages, related to contributions coming due *post-filing*." *Trs. of the Minn. Ceramic Tile and Allied Trades Ret. Fund v. Legacy Tile and Marble, Inc.*, No. CIV. 06-2965 (JNE/SRN), 2008 WL 624120, at *5 (D. Minn. March 4, 2008) (emphasis added); *See Bd. of Trs. of the Sheet Metal Workers v. Shoop*, No. C 02-05709 CRB, 2003 WL 22416691, at *2 (N.D. Cal. Oct. 20, 2003) (providing that "[a] court may also enter judgment for contributions owed and liquidated damages for those amounts that become delinquent *after the complaint is filed*") (emphasis added). "It would unnecessarily burden litigants and the courts, frustrate the deterrence of ERISA violations, and hinder recovery by injured . . . benefit funds to require ERISA plaintiffs to continually file new lawsuits or to continually amend their pleadings as new payments become delinquent." *Legacy Tile and Marble, Inc.*, 2008 WL 624120 at *5. "The purpose of § 1132 (g) is to provide employee benefit plans with a greater ability to collect delinquent employer contributions and to compensate employee benefits plans for the loss of use and the cost of collecting delinquent payments." *Chi. Dist. Council of Carpenters Pension Fund v. Indus. Erectors, Inc.*, 840 F. Supp. 1248, 1254 (N.D. Ill. 1993). "[A]llowing plaintiffs to seek recovery of contributions that become delinquent after suit is filed would accord with congressional intent." *Bd. of Trs. of the Sheet Metal Workers Health Care Trust of N. Cal. v. B.D. Bridon, Inc.*, No. C-95-1240 MHP, 1995 WL 573701, at *3 (N.D. Cal. Sept. 19, 1995). "The Senate Committee on Labor and Human Resources stated that the 1980 amendments to ERISA were meant to 'simplify delinquent collection' and make it more efficacious." *Id.* Additionally, another court in this Circuit has found that plaintiffs are entitled to interest and liquidated damages on contributions that become delinquent during the pendency of the suit. *Indus. Erectors, Inc.*, 840 F. Supp. at 1255. Accordingly, the Court finds that requiring Plaintiffs to file amended complaints, or separate suits, to recover unpaid contributions when they become due during the pendency of the instant suit would frustrate ERISA's purpose.

In response to Plaintiffs' Motion for Summary Judgment, Defendant does not refute that it was a party to a CBA with Plaintiffs,[2] was required to continue to make contributions, and failed to do so after the suit was filed. Instead, Defendant argues that it was not required under the settlement agreement, rather than the CBA, to keep contributions current. As discussed above, Defendant is precluded from trying to enforce the settlement agreement against Plaintiffs in the instant matter. Therefore, the Court finds that Defendant has failed to raise a genuine issue of material fact and Plaintiffs are entitled to recover damages for unpaid contributions that arose during the pendency of this suit.[3] Accordingly, summary judgment must be granted in Plaintiffs' favor.

## CONCLUSION

Accordingly, based on the foregoing, the Court hereby **GRANTS** the Plaintiffs' Motion for Summary Judgment [DE 13]. The Court **ORDERS** that Plaintiffs are entitled to all contributions that remain unpaid through and including the date of judgment in this action, as well as interest, liquidated damages, and reasonable attorney's fees and costs. While Plaintiffs submitted calculations for damages

---

[2] While Defendant alleges in its Answer to Plaintiffs' Complaint that it was a party to a CBA with Plaintiffs that was cancelled on May 31, 2006, is not currently a party to the CBA, and not presently required to make contributions to the Funds, Defendant failed to raise this argument in response to the Motion for Summary Judgment. *See* Def.'s Answer ¶¶ 5, 7. Accordingly, this argument is waived. *See Palmer v. Marion County,* 327 F.3d 588, 597 (7th Cir. 2003) (holding that claims not addressed in a summary judgment opposition brief are deemed abandoned); *Laborers Int'l Union of N. Amer. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived). Further, the exhibits submitted with the Motion for Summary Judgment show to the contrary. Specifically, the exhibits show that Defendant entered into a CBA with the Plaintiffs, signed by Defendant on October 12, 2006, but effective June 1, 2006, and Articles 9 and 14 of the CBA require Defendant to pay contributions to the Plaintiffs' Pension Trust Fund and Training Trust Fund.

[3] Although the Seventh Circuit has stated that ERISA's interest and liquidated damages provisions apply only to contributions unpaid at the date that the instant suit was filed, *Operating Engineers Local 139 Health Benefit Fund v. Gustafson Construction Corp.*, 258 F.3d 645, 654 (7th Cir. 2001), this rule has only been applied in cases where the Defendant paid the unpaid contributions, in whole or part, after the suit was commenced, and has not involved the instant situation in which unpaid contributions became due during the pendency of the suit. *See Bohlen v. Tilden & Tilden*, No. 2:05 CV 043 PS, 2007 WL 601760, at *3 (N.D. Ind. Feb. 20, 2007) (partial payment after suit commenced); *Bridge v. Transpersonnel, Inc.*, No. 03 C 2437, 2004 WL 2034075, at *4 (N.D. Ill. Sept. 10, 2004) (applying rule where whole payment of withdrawal payments made after suit was commenced).

on contributions owed for November and December 2008 along with their reply brief, the Court **ORDERS** Plaintiffs to file, within thirty days of the date of this Order, a memorandum along with supporting affidavits detailing the amount of (1) unpaid contributions at the initiation of the suit, (2) contributions that became delinquent during the pendency of the suit, (3) interest and liquidated damages for the categories of contributions listed in (1) and (2), and (4) reasonable attorney's fees and costs. The Court **DIRECTS** the Clerk of the Court to enter judgment in favor of the Plaintiffs and against the Defendant based on those amounts.

The Court **VACATES** all pretrial and trial dates and deadlines.

SO ORDERED this 17th day of March, 2009.

 s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record